UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAI ZIONG VUE,<br><br>                Plaintiff,<br><br>       v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>                Defendant. | Case No.  1:23-cv-00815-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND**<br><br>(Docs. 14, 16)<br><br>FOURTEEN-DAY DEADLINE |

**<u>Findings and Recommendations</u>**

**<u>INTRODUCTION</u>**

Plaintiff Mai Ziong Vue ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act.  The matter is currently before the Court on Plaintiff's motion for summary judgment or remand and the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for issuance of findings and recommendations.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's motion for summary judgment and granting the Commissioner's request to affirm the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for supplemental security income on January 22, 2020. AR 295-317, 318-30.[2] Plaintiff alleged she became disabled on July 15, 2015, due to depression, mental, hearing, headache pain, dizziness, pain in neck, shoulders, arms, hands, and back. AR 166, 373. Plaintiff's application was denied initially and on reconsideration. AR 166-70, 174-79. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Brian Battles issued a decision denying benefits on May 2, 2022. AR 12-29, 37-67. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied. AR 1-6. This appeal followed.

### **Relevant Hearing Testimony**

ALJ Battles held a telephonic hearing on January 25, 2022. AR 40. Plaintiff appeared with her non-attorney representative, Nicholas Martinez. Elizabeth Schultz, an impartial vocational expert, also appeared. AR 40-41.

At the outset of the hearing, the ALJ granted Plaintiff's motion to amend the alleged onset date to January 15, 2020. AR 44-45. Plaintiff testified with the assistance of an interpreter. In response to questions from the ALJ, Plaintiff confirmed that she lives with her family. She has eight children. She does not know their age ranges, but she has a baby. Her husband lives with her and does not work outside the home. Seven of her children attend school. AR 47-48. She has a California driver's license, and drives about once a month, but only one mile each way. AR 48-49. She has not received any education since being in the United States, not even English classes. AR 49.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    In response to questions from her representative, Plaintiff testified about her mental and
2  physical problems.  She is depressed and not able to do anything.  She has a lot of pain in her knees,
3  her hips, her shoulders, and low back.  She is barely able to stand.  She does not know how to read,
4  write, or speak.  It causes her a lot of depression because she is not able to do anything.  She also has
5  illnesses.  She is unable to sleep.  She is not able to prepare meals for herself.  Her husband and her
6  daughter prepare the meals for the family.  Her daughter helps her dress in the morning, selecting the
7  clothes and putting them on.  She has pain in her arms and body.  She is not able to raise her arms.
8  AR 51-52.  She takes pain medication, which helps for about 30 minutes.  AR 52.  She does not have
9  side effects from the medication.  AR 54.
10    When asked about her activities, Plaintiff testified that she does not go grocery shopping, is not
11  able to wash dishes, and does not go to the laundry.  She can only stand for about five or six minutes.
12  Her knees and her feet give her the most pain on standing.  AR 53.  She can only sit about 20 to 30
13  minutes.  AR 53. She does not watch TV.  She does not go anywhere socially regularly.  She does not
14  know how to use her cell phone to get on the internet.  She does not know how to make a phone call.
15  She cannot count change.   If she has a doctor's appointment, then her husband takes her.  AR 55-56.
16    When she is in pain, she lies down for about an hour.  She is not able to raise her legs to
17  elevate them to alleviate the pain. The doctor gave her some equipment to help with pain, which
18  makes it bearable.  She uses the equipment every day.  When she stops using it, the pain returns.  AR
19  53-54.  The doctor gave her braces for her knees, which only help a little bit.  AR 54-55.
20    When asked about her ability to use her arms, Plaintiff testified that she is not able to raise her
21  arms directly in front of her.  She is able to drive by holding the steering wheel and going slowly.  She
22  can slowly feed herself.  She also can slowly wipe herself after she is finished going to the bathroom.
23  Her arms have been hurting for the past three years, but she has only treated with medications.  She
24  recently was given braces for her knees and low back.  AR 56-58.
25    Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE")
26  through hypotheticals.  For the purposes of the VE's testimony, the ALJ asked the VE to assume that
27  Plaintiff has no past work.  For the first hypothetical, the ALJ asked the VE to further assume an
28  individual of Plaintiff's age, education, and work experience who is able to perform work at the light

exertional level. This individual could only occasionally stoop, kneel, crouch, and crawl, occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, never work in hazardous environments such as at unprotected heights or around moving mechanical parts. This individual could perform only unskilled work of a routine, repetitive nature consistent with Dictionary of Occupational Titles reasoning levels 1 and 2. This individual could work in a low stress job defined as making only occasional decisions and tolerating only occasional changes in the work setting. AR 61. The VE testified that such an individual could perform work that exists in the national economy, such as cleaner-housekeeping, marker, and routing clerk. AR 61-62.

For the second hypothetical, the ALJ asked the VE to assume the same individual with the same limitations from the first hypothetical who is able to perform work at the sedentary level. The VE testified that such an individual could perform other work that exists in the national economy, such as document preparer, call out operator, and parimutuel ticket checker. AR 62.

For the third hypothetical, the ALJ asked the VE to assume the same hypothetical individual with the same limitations and exertional levels from the previous hypothetical, but who could not attend to work tasks without frequent interruptions such that the individual would be absent from work on a regular and consistent basis more than two days a month or would be off task in excess of 20% of the time in an eight-hour workday in addition to regularly scheduled breaks. The VE testified that either of the limitations independently would exceed employer tolerances and preclude employment. AR 62-63. The VE explained that employers will tolerate 10% off task behavior within an eight-hour workday in addition to customary breaks. Employers also will typically tolerate one absence per month. The VE further explained that one absence is cumulative, meaning an individual may come in late or leave early but if that equals an eight-hour day in a one-month period, then that is an absence. The VE testified that anything in excess of that would preclude employment. AR 63.

For the fourth hypothetical, Plaintiff's representative asked the VE to consider an individual in either the first or second hypothetical that needed to have instructions for the jobs taught by visual demonstration. The VE testified that this would limit jobs to those of an SVP of 1. There would not be any jobs at the sedentary level and only one job at the light level—sandwich board carrier. AR 64.
///

4

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 15-29. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2020, the application date. AR 18. The ALJ identified the following severe impairments: adjustment disorder, anxiety, depression, intervertebral disc degeneration, and obesity. AR 18-19. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 19-21.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that she could occasionally stoop, kneel, crouch, and crawl, occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds, and could never work in hazardous environments, such as at unprotected heights or around moving mechanical parts. She could perform unskilled work of a routine, repetitive nature, consistent with Dictionary of Occupational Titles ("DOT") reasoning levels 1 and 2 and could work in a low stress job, defined as making only occasional decisions and tolerating only occasional changes in the work setting. AR 21-28. With this RFC, the ALJ determined that there were jobs existing in the national economy that Plaintiff could perform, such as cleaner (housekeeping), marker, and routing clerk. AR 28-29. The ALJ therefore concluded that Plaintiff had not been under a disability since January 15, 2020. AR 29.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112,

1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION[3]

Plaintiff raises the following arguments: (1) the ALJ failed to properly evaluate the medical opinions of record; and (3) the ALJ failed to offer any reason for rejecting Plaintiff's subjective complaints. (Doc. 14 at 3.)

///

///

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

**A. Evaluation of Medical Opinions**

Plaintiff first argues that the ALJ erred in his evaluation of the medical opinions from Dr. Pushpa Gursahani.  (Doc. 15 at 8.)

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. § 416.920c.  Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a).  The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors.  20 C.F.R. § 416.920c(b)(2).  Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. § 416.920c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2); *Woods,* 32 F.4th at 792.  The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792  "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Id.* (internal citations omitted).

<u>Physical RFC Opinions</u>

On July 8, 2021, Dr. Gursahani completed a Physical Medical Source Statement form and opined that Plaintiff could walk 2 city blocks without rest or severe pain, could sit 2 hours at one time, could stand 45 minutes at one time, could sit at least 6 hours in an 8-hour workday, and could stand/walk about 4 hours in an 8-hour workday.  AR 731-32.  Plaintiff would need to include periods

7

of walking every 90 minutes for 10 minutes at a time.  Her legs should be elevated at 45 degrees with prolonged sitting for 50% of an 8-hour day, and she must use a cane or other hand-held assistive device.  Plaintiff could occasionally lift less than 10 pounds and rarely lift 10 pounds.  AR 732.  She could never twist, stoop, crouch/squat, climb stairs, or climb ladders.  She also had significant limitation with reaching, handling, or fingering.  She would be off task 25% or more of a workday, was incapable of even "low stress" work, and was likely to be absent from work more than four days per month.  AR 733.  She would need to avoid temperature extremes and noise.  She also would need to take unscheduled breaks during a working day every 1 to 2 hours for 15-30 minutes.   Dr. Gursahani reported that the onset date for these limitations was 2013.  AR 734.

  The ALJ considered this opinion and did not find it persuasive.  AR 26.  In so doing, the ALJ evaluated the opinion's persuasiveness based on the relevant factors of supportability and consistency.  Addressing supportability, the ALJ indicated that the degree of limitation was not well supported, and few objective findings were referenced.  AR 26.  Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. § 416.920c(c)(1).  As the ALJ noted, Dr. Gursahani identified only a few clinical findings and objective signs, namely "depressed mood, anxious, hard of hearing," with neurological findings of positive straight leg raising.  AR 731.  There is no explanation in Dr. Gursahani's opinion as to how these clinical findings and objective signs, particularly those of depression, anxiety, and hearing, support Dr. Gursahani's opined walking, sitting, standing, or lifting limitations.  Moreover, there is no indication as to how these few findings, including those of positive straight leg raising, support Dr. Gursahani's opined manipulative limitations.  While the ALJ did not specifically elaborate on the objective findings, the Court is not deprived of its faculties for drawing specific and legitimate inferences from the ALJ's opinion.  *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

  Addressing consistency, the ALJ determined that the degree of limitation opined was not consistent with the longitudinal record available at the hearing level.  AR 26.  Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2).  Here, the ALJ referenced Plaintiff's normal and abnormal physical examination findings, her performance during the consultative

evaluation, her subjective complaints, and her activities of daily living. AR 26, citing AR 718-24, 813-14, 817-81, 835-39. Of note, the cited March 2022 consultative evaluation revealed findings plainly inconsistent with Dr. Gursahani's opined limitations. The findings included normal station and gait, knee and back braces that did not appear necessary, negative seated and supine straight leg raising, no redness, heat, swelling, tenderness, effusions, ligamentous laxity or crepitus of her knees, 5/5 strength in the bilateral upper and lower extremities, including grip, normal bulk and tone, no atrophy, a grossly intact sensory exam, and good range of motion. AR 835-89. Plaintiff also reported to the consultative examiner that she does some cooking cleaning, occasionally drives, shops, performs her own activities of daily living, and walks some for exercise. AR 836.

On October 15, 2021, Dr. Gursahani completed a second Physical Medical Source Statement. AR 739-42. Dr. Gursahani opined that Plaintiff could walk 2 city blocks, sit for more than 2 hours at one time, stand for 2 hours at one time, sit least 6 hours in an 8-hour working day, and stand/walk about 2 hours in an 8-hour working day. Plaintiff would need a job that permitted shifting positions at will. Plaintiff would need to take unscheduled breaks during the working day every 1-2 hours for 15-30 minutes and would need to elevate her legs 30 degrees for 50% of the day. AR 739-40. She did not require a cane or other hand-held assistive device. AR 740. She could occasionally lift less than 10 pounds and rarely lift 10 pounds. She could occasionally climb stairs, but never twist, stoop (bend), crouch/squat, or climb ladders. She also had significant limitation with reaching, handling, or fingering. Dr. Gursahani further opined that Plaintiff would likely be off task 25% or more during a typical workday, was incapable of even "low stress" work, and would likely be absent from work more than four days per month. AR 741. Dr. Gursahani reported that these limitations applied since 2013. AR 742.

The ALJ considered this opinion and did not find it persuasive. AR 26. In so doing, the ALJ evaluated the persuasiveness of the opinion based on the factors of supportability and consistency. AR 26-27. Addressing supportability, the ALJ determined that the degree of limitation was "not well supported, referencing very general complaints and objective findings." AR 26. Dr. Gursahani's opinion identified clinical findings of "[f]lat affect, depressed mood, limited range of motion, hard of hearing." AR 739. There is no explanation as to how these clinical findings and objective signs,

particularly those of flat affect, depressed mood, and hard of hearing, support Dr. Gursahani's opined physical limitations regarding walking, sitting, standing, or lifting.  Moreover, there is no indication as to how these findings, including a general statement regarding limited range of motion, support Dr. Gursahani's opined manipulative and postural limitations.  Further, the ALJ noted that Dr. Gursahani opined different and more severe limitations several months earlier in July 2021, and also indicated that those limitations began in 2013.  The ALJ therefore found that Dr. Gursahani's limitations were not consistent, despite his indication "that they should be in place for the same time frame." AR 27.

Addressing consistency, the ALJ determined that the opined limitations were not consistent with the longitudinal record during the period at issue.  The ALJ considered Plaintiff's normal and abnormal physical examination findings, her performance during the consultative evaluation, her conservative treatment, her subjective complaints, and her activities of daily living.  AR 27.  Of note, the ALJ cited evidence of Plaintiff's conservative treatment with medication, knee and back braces, and a TENS unit.  AR 27, 828-32.  The ALJ also cited the March 2022 consultative examination, which revealed findings inconsistent with Dr. Gursahani's opined limitations.  Those findings included normal station and gait, knee and back braces that did not appear necessary, negative seated and supine straight leg raising, no redness, heat, swelling, tenderness, effusions, ligamentous laxity or crepitus of her knees, 5/5 strength in the bilateral upper and lower extremities, including grip, normal bulk and tone, no atrophy, a grossly intact sensory exam, and good range of motion.  AR 27, 835-89.  The ALJ additionally cited Plaintiff's activities of daily, which Plaintiff also reported to the consultative examiner, stating that she does some cooking cleaning, occasionally drives, shops, performs her own activities of daily living, and walks some for exercise.  AR 27, 836.

Mental RFC Opinions

On July 8, 2021, Dr. Gursahani also completed a Residual Functional Capacity Questionnaire form.  Dr. Gursahani opined that Plaintiff's mental abilities for understanding and memory were precluded for 10 to 15% or more of the day; her mental abilities for sustained concentration and memory were precluded for 10 to 15% or more of the day; her social interaction abilities were precluded for 10 to 15% or more of the day; and her adaptation abilities were precluded for 15% or more of the day.  AR 735-36.  Dr. Gursahani estimated that Plaintiff would be absent from work for 5

days or more per month and would be unable to complete an 8-hour workday for 5 days or more per month. Dr. Gursahani indicated that the onset date for these limitations was 2013. AR 737.

The ALJ considered this opinion but did not find it persuasive. In so doing, the ALJ evaluated the opinion's persuasiveness based on the relevant factors of supportability and consistency. Addressing supportability, the ALJ found that the opinion was "not well supported referencing the claimant's diagnoses, medication, and only general objective findings." AR 25. As noted by the ALJ, Dr. Gursahani identified Plaintiff's diagnoses of depression, anxiety, hearing loss, knee pain, back pain, gouty arthritis, and wrists pain, along with her medications. AR 735. Dr. Gursahani did not identify any objective or clinical findings supporting the extensive limitations, instead only generally referencing depression, anxiety, and impaired memory and learning capabilities. AR 735-37.

Addressing consistency, the ALJ determined that the degree of limitation opined was "not consistent with the longitudinal record during the period at issue." AR 25. The ALJ referenced Plaintiff's normal and abnormal mental status examinations, her conservative treatment, her subjective complaints, and her activities of daily living. Of note, the ALJ cited evidence of normal mental status examinations (AR 647, 657, 721, 722), the conflicting opinion and limitations identified by the consultative psychiatric examiner (which included documentation of Plaintiff's lack of compliance with the examiner) (AR 692-95), and her own reported activities of daily living, including some cooking and cleaning, occasional driving, shopping, performing her own activities of daily, and walking some for exercise (AR 836). AR 25. As this evidence is plainly inconsistent with Dr. Gursahani's extreme mental limitations, the ALJ's path is reasonably discernable. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012).

On October 15, 2021, Dr. Gursahani completed a Mental Residual Functional Capacity Questionnaire. AR 743-45. Dr. Gursahani opined that Plaintiff's mental abilities for the performance of understanding and memory were precluded for 15% or more of an 8-hour workday; her mental abilities for sustained concentration and memory were precluded for 10 to 15% or more of an 8-hour workday; her social interaction abilities were precluded for 15% or more of an 8-hour workday; and her adaptation abilities were precluded for 15% or more of an 8-hour workday. AR 743-44. Dr. Gursahani estimated that Plaintiff would be absent from work for 5 days or more per month and would

11

be unable to complete an 8-hour workday for 5 days or more per month. Dr. Gursahani indicated that the onset date for these limitations was 2013. AR 745.

The ALJ considered this opinion but did not find it persuasive. AR 25-26. In so doing, the ALJ evaluated the opinion's persuasiveness based on the factors of supportability and consistency. Addressing supportability, the ALJ found the opinion "not well supported" because it noted "only general findings and the claimant's diagnoses and medications." AR 26. As noted by the ALJ, the opinion identified Plaintiff's diagnoses of depression, anxiety, gouty arthritis, and hyperlipidemia, along with Plaintiff's medications. AR 743. However, Dr. Gursahani did not identify any objective or clinical findings, only generally referencing depression and anxiety disorders to explain Plaintiff's limitations in sustained concentration and memory, social interaction, and adaptation. AR 743-45. Further, the ALJ noted that Dr. Gursahani opined different limitations several months earlier in July 2021, and also indicated that those limitations began in 2013. The ALJ therefore concluded that Dr. Gursahani's limitations were not consistent, despite his indication "that they should be in place for the same time frame." AR 26.

Addressing consistency, the ALJ found that the degree of limitation was not consistent with the longitudinal record. AR 26. The ALJ referenced Plaintiff's normal and abnormal mental status examinations, her conservative treatment, her subjective complaints, and her activities of daily living. Of note, the ALJ cited evidence of normal mental status examinations (AR 647, 657, 721, 722), Plaintiff's lack of compliance and the related findings of the consultative psychiatric evaluation (AR 692-95), and her reported performance of activities of daily living (AR 836). AR 26.

Plaintiff argues that the ALJ failed to craft a sufficient logical bridge between the evidence and conclusions. (Doc. 14 at 9.) In particular, Plaintiff asserts that the ALJ failed to provide any explanation for the conclusion that Dr. Gursahani's opinions were not well supported. As discussed above, however, the ALJ cited Dr. Gursahani's failure to support the opinions with more than general findings. This explanation was sufficient. The ALJ's reasoning is readily apparent and reasonably discernable, particularly with respect to the opined physical limitations. As discussed above, Dr. Gursahani failed to identify objective or clinical findings supporting the opined physical limitations, and instead primarily referenced depression, anxiety, and hearing difficulties. Plaintiff also asserts

that the ALJ failed to provide any explanation as to which evidence he found inconsistent with Dr. Gursahani's opined limitations. At a minimum, however, the ALJ's citations to specific treatment records and evidence showing generally unremarkable physical findings and mental status examinations, along with the relevant consultative examination findings, sufficiently demonstrate why the ALJ found Dr. Gursahani's opinions inconsistent with the longitudinal record. Even when an agency "explains its decision with 'less than ideal clarity,'" the Court must uphold it "if the agency's path may reasonably be discerned." *See Molina*, 674 F.3d at 1121.

### B. Subjective Testimony

Plaintiff contends that the ALJ committed harmful error by failing to state a clear and convincing reason for rejecting Plaintiff's testimony. (Doc. 14 at 13.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 22. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints. First, the ALJ determined that Plaintiff's statements regarding the limiting effects of her symptoms were not entirely consistent with the objective medical evidence. AR 22, 23. While a lack of objective medical evidence cannot form the sole basis for discounting testimony, inconsistency with the medical evidence or medical opinions can be sufficient. *See Woods v. Comm'r of Soc. Sec.*, No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also* S*martt v.*

13

*Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *accord Dittmer v. Comm'r of Soc. Sec.*, No. 1:22-CV-01378-SAB, 2024 WL 967439, at *9 (E.D. Cal. Mar. 6, 2024) ("Ninth Circuit caselaw has distinguished testimony that is 'uncorroborated' by the medical evidence from testimony that is 'contradicted' by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard."). Here, the ALJ determined that Plaintiff's allegations regarding her physical impairments were not fully consistent with the objective medical evidence, including physical examinations showing normal gait, negative straight leg raise, no knee tenderness, intact strength, full range of motion in her extremities, normal range of motion in her spine, and intact reflexes. AR 22, 23; *see also* AR 27, citing AR 721 (negative straight leg raising, full range of motion in her extremities); 836-39 (normal gait, 5/5 strength, negative straight leg raising, good range of motion, normal strength, normal knee exam, intact reflexes). The ALJ also cited Plaintiff's performance at the consultative examination, during which Plaintiff was able to get out of a chair, walk at a normal speed without assistance, sit comfortably, and get on and off the exam table easily. AR 23, 836-39. Similarly, with regard to Plaintiff's mental impairments, the ALJ noted Plaintiff's normal mental status examinations showing cooperative behavior, normal mental status, appropriate affect, goal directed thought process, good eye contact, and normal mood and affect. AR 23, citing AR 647 (cooperative); 657 ("Neurological: grossly normal, appropriate affect"); AR 692-95 (goal directed thought process) ; 721 ("appropriate behavior, good eye contact with appropriate conversation"; "Normal mood and affect."); 759 (mental status withing normal limits); 818.

Second, the ALJ discounted Plaintiff's allegations based on her conservative treatment for both her physical and mental impairments. AR 22-23, 27. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (determining ALJ entitled to reject subjective complaints of pain that were inconsistent with claimant's "minimal, conservative treatment"). Specific to Plaintiff's physical impairments, the ALJ noted that Plaintiff treated conservatively with medication and knee and back braces, and cited evidence of Plaintiff's use

14

of a TENS unit.  AR 23, citing AR 813 (knee brace); 828-33 (back brace, knee brace, TENS unit); 835-36 (medications; noting no injections or surgeries for knee or back); AR 27.  Likewise, specific to Plaintiff's mental impairments, the ALJ noted Plaintiff's conservative treatment.  AR 23, citing AR 718-23 (medications).

Third, the ALJ contrasted Plaintiff's use of a knee and back brace with the observations of the consultative examiner, who noted that Plaintiff's back and knee braces appeared new with minimal wear and that they did not appear to be necessary. AR 23, citing AR 835-39.  Relevant here, the consultative examiner observed:  "She comes in with a brand new knee braces on.  These have no signs of wear whatsoever.  There is no fuzz in the Velcro." AR 835.  The consultative examiner also observed:  "The claimant comes in with a brand new appearing knees braces which it does not appear she needs.  She comes in with a back brace which appears nearly as new with minimal wear and no fuzz in the Velcro.  This does not appear to be necessary."  AR  837.  In evaluating subjective complaints, the ALJ may consider the observations of an examining physician.  *See Debra L.R. v. Kijakazi*, No. 2:20-CV-9028-GJS, 2022 WL 561933, at *3 (C.D. Cal. Feb. 24, 2022) (indicating ALJ may consider many factors when assessing claimant's testimony, including the observations of treating and examining physicians); *accord Lawrence J. v. Kijakazi*, No. ED CV 22-571-E, 2022 WL 17886039, at *3 (C.D. Cal. Oct. 7, 2022) ("A disparity between a claimant's claimed incapacity and the observations of an examiner properly may undercut a claimant's credibility.")

The ALJ also considered that Plaintiff did not comply with all testing during her psychological consultative examination.  AR 23, citing AR 692-95.  For instance, the consultative examiner indicated that "[t]he claimant would answer 'I don't know' or 'I can't remember' to each question asked of her." AR 694.  She did not do the digit span task and did not comply with the immediate recall testing or with a simple math question.  AR 694.  In evaluating a claimant's subjective pain and symptom testimony, an ALJ may consider ordinary techniques of credibility evaluation, including inconsistent statements, symptom exaggeration, and lack of cooperation during consultative examinations.  *See*, *e.g.*, *Moreno v. Comm'r of Soc. Sec.*, No. 1:19-cv-01580-SAB, 2021 WL 84376, at *6 (E.D. Cal. Jan. 11, 2021) (citations omitted); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (concluding ALJ properly discredited claimant's testimony, including citing her "lack of

cooperation at the hearing, her presentation at the hearing, her tendency to exaggerate, her inconsistent statements, and her lack of cooperation during consultative examinations").

Even if one of these reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle*, 533 F.3d at 1161-63 (concluding that two invalid reasons to reject a claimant's testimony was harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina*, 674 F.3d at 1115 ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for summary judgment or remand (Doc. 14) be denied.
2. The Commissioner's request to affirm the agency's determination (Doc. 16) be granted.
3. The Clerk of this Court be directed to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Mai Ziong Vue.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

///
///
///
///
///

Recommendations." The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 22, 2024**     /s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE